IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VAHID SEDGHI,<br>Plaintiff, | *<br>*<br>* |
| v. | * Civil No. JFM-07-1636<br>* |
| PATCHLINK CORPORATION,<br>Defendant. | *<br>*<br>* |
| ********* | |

OPINION

Plaintiff Vahid Sedghi ("Plaintiff") brings this action against PatchLink Corporation ("PatchLink" or "Defendant")[1] for breach of contract, loss of commission under the Maryland Wage Payment and Collection Law ("MWPCL"), loss of commission under the Wholesale Sales Representatives Statute, unjust enrichment, fraud, negligent misrepresentation, and promissory estoppel.[2] Now pending before this Court are Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(b).[3] For the following reasons, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is denied.

---

[1] Defendant is now called Lumension Security, Inc.
[2] Plaintiff also asserted claims for violation of 42 U.S.C. § 1981 and Title VII (Counts VIII through XI), but stipulated to their dismissal on February 13, 2009.
[3] PatchLink has also filed a motion to strike certain evidence in Plaintiff's response. Specifically, PatchLink has requested that I strike the evidence of alleged Persian animus. In Plaintiff's Response to this motion, he seems to acknowledge that the alleged animus would be relevant only to the MWPCL claim. Because I am granting summary judgment for the Defendant on the MWPCL claim for unrelated reasons, it is unnecessary for me to decide this issue. PatchLink's motion is therefore denied as moot.

1

I. Background

The facts of the dispute are largely uncontested. In 2004, a group of venture capital firms invested approximately $35 million in PatchLink, a small Arizona-based software company that had been incorporated in Delaware in 1999. At the time of the investment, the company was run by PatchLink founder Sean Moshir ("Sean") and his brother Kourosh Moshir ("Kourosh") (collectively "Moshirs"). Within weeks of closing the venture capital investment, Sean asked Plaintiff, a longtime friend from college, to join the company's office in Maryland.

On September 3, 2004, Plaintiff signed the company's standard employment agreement. The effective date of the agreement was September 7, 2004. The compensation portion of Plaintiff's contract reads:

  a. As compensation for the services provided by employee under this AGREEMENT, EMPLOYER will pay EMPLOYEE an initial annual salary of $135,000 dollars. . . .
  b. Employer will provide N/A stock option to the employee. . . .
  c. Commission is paid according to PatchLink sales policy.
  d. There are no other compensation, incentive, bonuses, payments, stocks, deferred payments, deferred salary, stock options or any other payment due to the employee other than what is set forth in this agreement unless otherwise added as amendment to this contact [sic] and signed by both the EMPLOYEE and the president of the company.

(Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."), Ex. 5 Employment Agreement at ¶ 3.) The language about commissions in part "c." was used in employment contracts for a range of employees, many of whom were not eligible to receive a commission. At least some employees who qualified for commission had clearly defined commission plans in writing. Plaintiff's contract was not supplemented by a rate of commissions or identification of what types of products or services would qualify for commission. The

2

contract also contained a provision specifying, "This AGREEMENT shall be construed and enforced in accordance with the laws of the State of Arizona." (*Id.* at ¶ 26.2.)

During Plaintiff's employment, several changes in his compensation were memorialized in documents placed in his personnel file, as required under part "d." quoted above. These changes include adding eligibility for a bonus, increasing his base pay, and granting him stock options. Plaintiff now alleges, and testimony from the Moshirs corroborates, that around the time Plaintiff signed his employment contract they also agreed to change his compensation by adding a commission of "1 percent of the sales." Plaintiff was to be paid this commission upon completion of his first year of work for the company, at which point they would put the new compensation package in writing. By October 2005, however, the Moshirs were no longer employees of PatchLink. The parties agree that no writings memorialized this alleged change to Plaintiff's contract.

Around the time the Moshirs left PatchLink, Plaintiff wrote PatchLink's new CEO, Corey Smith ("Smith"), about his proposals for dealing with his and other sales engineers' pay. In this email correspondence, Plaintiff requested payment for overtime, reimbursement of unpaid 2005 expenses, and the immediate vesting of his stock options. He did not mention commissions. Smith initially declined to pay Plaintiff overtime or vest his stock options but ultimately granted him a one-time payment of a $5,000 bonus in October 2005. On October 31, 2005, Plaintiff began working under a new supervisor, Carl Lytikainen ("Lytikainen"). At Plaintiff's request, Lytikainen discussed Plaintiff's compensation plan with him. Lytikainen acknowledges Plaintiff may have raised the issue of commissions in these conversations, but Plaintiff was unable to substantiate his claim for a commission plan, and he was not given a commission plan at that time. No PatchLink employees attempted to contact the Moshirs regarding the commission issue

at any point prior to this litigation, and it is alleged by Plaintiff that oral promises of commission were not unusual during the period when he was hired.

In early 2006, PatchLink increased Plaintiff's base pay to $140,000 and added a bonus program allowing him to earn up to 15 percent of his base pay. Plaintiff was unhappy with this new plan and emailed Lytikainen to demand payment for 800 overtime hours from the previous year and payment from a commission plan. Without any documentation for a commission plan, however, Lytikainen declined to pay Plaintiff a commission. In October 2006, Plaintiff again raised a concern about the perceived inadequacy of his compensation and emailed Lytikainen about whether his bonus should be paid quarterly or biannually. In the spring of 2007, the company decided it needed to restructure Plaintiff's position and offered him a severance package or a different position, which would have reduced his base salary but given him a commission package that increased his total compensation. The parties debated the compensation package for weeks. In the midst of the negotiations, on April 6, 2007, Plaintiff announced that he believed he was entitled to a commission of one percent of the company's total sales. He alleges the principal amount due to him to be $636,796.55.

Since March 2008, Plaintiff has worked for Cell Trust, a competitor of PatchLink, that is controlled and run by the Moshirs.

II. Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court of the United States explained that in considering a motion for summary

4

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

III. Choice of Law

The question of whether Maryland or Arizona law applies is significant in nearly every Count before the Court, so it is helpful to begin by outlining some overarching principles. In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008). The district court must therefore apply the law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In contract actions, Maryland courts generally apply the law of the jurisdiction where the contract was made. *See, e.g.*, *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). In tort actions, Maryland adheres to the *lex loci delicti* rule, meaning it applies the substantive law of the state where the wrong occurred. *Ben-Joseph*, 529 F. Supp. 2d at 606 (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648-49 (Md. 2007)) (other citations omitted).

Parties generally may, however, contract around the choice-of-law rules. The Maryland Court of Appeals "has long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract, and thereby trump the conflict of law rules that

5

otherwise would be applied by the court." *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007) (citing *Williams v. N.Y. Life Ins. Co.*, 89 A. 97, 99 (1913)). This general rule is subject to two limitations. Maryland courts will not honor a choice-of-law provision if (1) the chosen state has no substantial relationship to the parties or the transaction, or (2) application of the law of the chosen state would violate a strong Maryland public policy. *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994) (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 187(2) (1989)). Maryland courts have found a strong public policy "where the statutory language or the creation of a private cause of action evinced the legislature's intent to create a strong public policy." *ACE Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 706 (D. Md. 2008).

IV. Analysis

A. <u>Breach of Contract Claim</u>

Plaintiff's breach of contract claim is barred by the statute of frauds.[4]

---

[4]Plaintiff's claim is also likely barred by part "d" of the compensation portion of Plaintiff's employment agreement that provides that "[t]here are no other compensation, incentive, bonuses, payments, . . . or any other payments due to the employee other than what is set forth in this agreement unless otherwise added as an amendment to this contact [sic] and signed both by the EMPLOYEE and the president of the company." There is no writing that reflects the one percent commission on the company's total sales claimed by Plaintiff, and there is no evidence in the record from which it can be inferred that the parties by their conduct waived the requirement of part "d." *See generally Sitkin v. Smith*, 276 P. 521 (Ariz. 1929); *Freeman v. Stanbern Constr. Co.*, 106 A.2d 50 (Md. 1954). I need not reach this question, however, in light of the fact that Plaintiff's contract claim is barred by the statute of frauds.

Likewise, I need not decide PatchLink's contention that Plaintiff's claim is barred by Arizona's one year statute of limitations for breach of employment contracts. Plaintiff argues that Maryland law (which has a three year statute of limitations), not Arizona law, applies because statute of limitations generally are deemed to involve procedural, not substantive, issues to which the law of the forum state applies. *See generally Sokolowski v. Franzer*, 769 F.2d 975, 978 (4th Cir. 1985). PatchLink counters that the legislative history of the Arizona statute makes it clear that the statute is intended to extinguish the right to bring a breach of contract action, not

As explained above, Maryland courts generally honor parties' choice-of-law provisions. Plaintiff has not argued that honoring the Arizona choice-of-law clause would violate Maryland's strong public policy or that Arizona has no relationship to the parties, so I will apply Arizona law. Under the Arizona statute of frauds, an agreement must be in writing and signed by the party to be charged if the agreement is one "which is not to be performed within one year from the making thereof." ARIZ. REV. STAT. § 44-101(5); *see also W. Chance No. 2, Inc. v. KFC, Corp.*, 957 F.2d 1538, 1541 (9th Cir. 1992) ("Under Arizona law, contracts which are not to be performed within one year from the making of the contract must be in writing.").[5] Here, under plaintiff's alleged oral agreement with the Moshirs, he was to be paid a one percent commission of the company's sales in October 2005, more than one year after he signed his employment agreement (on September 3, 2004) and September 7, 2004 (the effective date of the agreement). Yet Plaintiff contends, without identifying any supporting testimony or evidence, that the statute of frauds does not apply because he would have been due a pro rata portion of the company's commission had he left the employ of PatchLink prior to October 2005. This argument is entirely speculative because there is no evidence that Plaintiff would have been entitled to any commission unless he remained at PatchLink through October 2005. To the contrary, the deposition testimony of Kourosh and Sean Moshir reinforces the idea that Sedghi was required to remain at PatchLink until October 2005 in order to collect the commission. (*See*

---

the remedy for a breach of contract, and that therefore the Arizona statute is substantive rather than procedural in nature. *See President & Dirs. of Georgetown Coll. v. Madden*, 660 F.2d 91, 94-95 (4th Cir. 1981); *Pottratz v. Davis*, 588 F. Supp. 949, 952 (D. Md. 1984).

[5] Plaintiff suggests that the testimony of the Moshirs supporting his claims that he had an agreement that he would received a one percent commission of the company's sales constitutes an acknowledgment by PatchLink of the existence of the agreement, thereby removing Plaintiff's claim from the statute of frauds. The fallacy in this contention is, of course, that at the time they were deposed and gave their testimony, the Moshirs no longer worked at PatchLink or were authorized to speak on its behalf.

Ex. 2, K. Moshir Depo. at 34-37 ("My understanding was I was going to structure his commission in after one year that he worked at PatchLink, sometime in like the fourth quarter, maybe, of 2005."); Ex. 3, S. Moshir Depo. at 16-19 ("October [2005] was the timeframe" in which the bonus was to be paid). Thus, because the commission would not be paid until October 2005, the alleged commission agreement, struck in September 2004, could "not . . . be performed within one year from the making of the contract." *W. Chance*, 957 F.2d at 1541. Thus, Plaintiff's claim is barred by the statute of frauds.

### B. Claim Under the Maryland Wage Payment and Collection Law

Count II of Plaintiff's complaint alleges loss of commission under the MWPCL, MD. CODE ANN., LAB. & EMPL. §§ 3-501 to 3-507. PatchLink argues that the remedies of the MWPCL are not available to Plaintiff because the parties chose Arizona law to govern their employment agreement. Plaintiff counters that employers cannot contract around the MWPCL. This claim is fatally flawed for two reasons.

First, assuming (contrary to what I believe to be true) the MWPCL applies, the statute does not confer any cause of action upon Plaintiff. The MWPCL merely requires that commissions owed to salespersons be paid to them. Nowhere does it suggest that a contract-based claim for commissions, which itself is barred by the statute of frauds, is nevertheless enforceable as a statutory violation.

Second, the MWPCL is not applicable in this case. As set forth above, a choice-of-law clause will not be enforceable if it contravenes a strong public policy of the state in which the action is filed. No Maryland state court has yet evaluated whether the MWPCL embodies such a

strong public policy.  Case law in the Federal District of Maryland, however, has held that it does not.  In *Taylor v. Lotus Dev. Corp.*, 906 F. Supp. 290, 298 (D. Md. 1995), the court contrasted the MWPCL with statutes the Maryland Court of Appeals had determined showed Maryland's strong public policy.  It explained that the Maryland Court of Appeals found statutes to show strong public policy where they "contained language which unambiguously expressed that their provisions represented fundamental public policy of the state; moreover, any purported waiver of the provisions contained in those statutes was expressly unenforceable." *Id.* (citations omitted). The court therefore concluded that the MWCPL did not represent fundamental public policy, and enforced the parties' choice-of-law provision.  *Id. Taylor* continues to be cited approvingly in the District of Maryland.  *See, e.g.*, *ACE*, 587 F. Supp. 2d at 706; *Yeibo v. E-Park of DC, Inc.*, DKC 2007-1919, 2008 WL 182502, *5-6 (D. Md. Jan. 18, 2008).

Plaintiff argues that *Taylor* was effectively overruled by *Medex v. McCabe*, 811 A.2d 297 (Md. 2002).  In *Medex*, the Maryland Court of Appeals determined that as between a Maryland employer and a Maryland employee, "[c]ontractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts" under the MWCPL.  811 A.2d at 304.  *Medex* is not, of course, directly on point here because the Court of Appeals was considering only whether the provision of a Maryland contract violated Maryland public policy, not whether the MWCPL incorporates a strong public policy, as is required in the conflict of law analysis.  Post-*Medex*, judges in this district have continued to hold that the MWCPL does not apply when parties use a choice-of-law clause to choose another state's law.  *See Yeibo v. E-Park of DC, Inc.*, 2008 WL 182502, *5-6 (D. Md. Jan. 18, 2008); *Kunda v. C.R. Bard, Inc.*, 1:08-CV-03008-MJG (D. Md. June 19, 2009).  *Kunda* has been appealed, and the issue presently is pending before the Fourth Circuit.  In any event,

however *Kunda* is resolved, I am fully persuaded that it is not against strong Maryland public policy to hold that the MWCPL does not require an employer to pay commissions or a bonus pursuant to a contractual provision which is entirely unenforceable under the law of the state that the parties have selected to apply to the contract.[6]

### C. Claim Under the Wholesale Sales Representative Statute

In Count III, Plaintiff alleges loss of commission under the Wholesale Sales Representatives Statute. *See* MD. CODE ANN., LAB. & EMPL. §§ 3-601 to 3-607. The statute protects the commissions of any "sales representative," which is defined as "a person who: (i) enters into a contract with a principal to solicit in the State a wholesale order; and (ii) is paid wholly or partly by commission." *Id.* § 3-601(d). The statute "does not apply to an individual who is considered under the Maryland Wage Payment and Collection Law to be employed by a principal." *Id.* § 3-602. The statute plainly does not cover employees like Plaintiff, who did not solicit wholesale orders and who is employed by a principal.[7] Plaintiff did not dispute this observation in his Response. Summary judgment is granted for PatchLink on this Count.

---

[6] Plaintiff also argues that Arizona's Wage Payment Law provides an additional or alternative ground for a valid cause of action. *See* ARIZ. REV. STAT. § 23-355 ("[I]f an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."). As Plaintiff himself contends, this statute is substantially similar to the Maryland statute, and I find that it does not provide a remedy for a contractually-based claim that itself is unenforceable. Moreover, I find that Plaintiff may not assert a claim under the Arizona Wage Payment Law. He did not assert a claim under Arizona law in his complaint, amended complaint, or second amended complaint, arguing instead that he should be entitled to assert a claim under the statute for the first time in the briefing of the present motion. In the scheduling orders entered by this court, Plaintiff was required to amend any of his claims long ago, and he has not shown good cause under Fed. R. Civ. P. 16(b) for not having done so.

[7] Because the statute is plainly inapplicable, I need not consider the question whether the parties' choice-of-law clause would have overridden its application.

D.  Claim for Unjust Enrichment

Plaintiff next asserts a claim for unjust enrichment. The parties once again disagree as to whether Maryland or Arizona law applies.[8]

The Fourth Circuit has observed that "[w]here a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims . . . other courts have honored the intent of the parties to choose the applicable law." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing the Third and Sixth Circuits).[9] Therefore, when faced with choice-of-law language that indicated that "the parties intended to cover more than merely contract claims," the Court recognized "the close relationship of the tort claims to the contract" and applied the parties' chosen law. *Id.*; *see also Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Group*, 299 F. Supp. 2d 505, 520-21 (D. Md. 2004) (applying the parties' choice-of-law clause to an unjust enrichment claim); *cf. Varsity Gold, Inc. v. Lunenfeld*, No. CCB-08-550, 2008 WL 5243517, *3 (D. Md. 2008) ("[C]ourts in this circuit have consistently found facially contractual forum selection clauses to apply to related tort claims."); *Berry v. Soul Circus, Inc.*, 189 F. Supp. 2d 290, 294 (D. Md. 2002) (finding a forum selection clause in an employment contract to encompass plaintiff's tort claim for unjust enrichment). In another case, however, the Fourth Circuit held that the applicability of a choice-of-law provision to "extra-contractual claims" such as unjust enrichment "must be determined by the law of the state chosen by the parties in the contract." *Bunker Holdings, Ltd. v. Green Pac. A/S*, 346 Fed. App'x 969, 973 (4th Cir. 2009) (citations omitted) (holding that Greek law controlled the issue).

---

[8] Neither party provides case law to support the application of its chosen law for this Count.
[9] Quasi-contractual claims such as negligent misrepresentation and unjust enrichment are technically tort claims. *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 (D. Md. 2003).

Following this precedent, therefore, it is an issue of Arizona law whether the unjust enrichment claim is included within the scope of the choice-of-law clause.[10]

The parties have not cited, and I have been unable to identify, a clear holding from the Supreme Court of Arizona that resolves this issue, but some federal case law is instructive. In *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992), the Ninth Circuit, hearing an appeal from an Arizona federal district court, applied Arizona law to an unjust enrichment claim, despite the existence of a choice-of-law provision specifying that California law would apply. The Ninth Circuit explained, "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision." *Id.* at 407 (citing *Consol. Data Terminals v. Applied Digital Data Sys.*, 708 F.2d 385, 390 n.3 (9th Cir. 1983)); *see also Carney v. Singapore Airlines*, 940 F. Supp. 1496, 1498 (D. Ariz. 1996) (citing *Consol. Data Terminals* for the proposition, "Claims arising in tort are decided according to the law of the forum state, in this case Arizona."). It therefore applied the law of the forum state, Arizona, and determined that Arizona would apply its own law. *Sutter Home Winery*, 971 F.2d at 407. Although at least one court has found that "Arizona courts would consider the scope of a contractual choice of law provision in order to effectuate the parties' intent," thus potentially reading the provisions to encompass certain torts, *Magellan Real Estate Inv. v. Losch*, 109 F. Supp. 2d 1144, 1156-58 (D. Ariz. 2000), many courts have read clauses similar to the one at issue here to be too narrow to support extension to tort claims. *See Green Leaf Nursery v. E.I. Dupont De Nemours & Co.*, 341 F.3d 1292, 1300-01 (11th Cir. 2003) (collecting cases with a "narrow choice-of-law clause"). Following this precedent, it seems most likely that Arizona would find the unjust enrichment

---

[10] Judges in this District have disagreed on which law applies to unjust enrichment claims, even in the absence of a choice-of-law clause. *See RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009) (noting the disagreement and citing examples).

claim to fall outside the scope of the parties' choice-of-law clause, which means the law of the forum state—Maryland—applies.[11]

Under Maryland law, a claim of unjust enrichment "may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008) (internal quotation and citations omitted); *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests."); *Swedish Civil Aviation v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (quoting and applying *County Comm'rs*). This approach "has been followed universally in both federal and state courts." *County Comm'rs*, 747 A.2d at 607-08 (providing an extensive list of cases). Courts rarely deviate from this principle, and do so "only when there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter." *Id.* at 608-09; *Janusz*, 947 A.2d at 567-68 (internal quotation and citations omitted).

Here, there was an express contract that covered the work performed by the Plaintiff for PatchLink. The work for which Plaintiff believes he is entitled to commissions is no different from the work he performed under the written contract. Therefore, Plaintiff cannot bring a claim for unjust enrichment under Maryland law.

---

[11] Although I have discussed the choice of law question in some detail, I note my conclusion about the viability of Plaintiff's claim would be the same under Arizona law. *See Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (same).

13

### E. Claim for Fraud

The parties agree that Maryland law applies to the fraud claim, which comports with the conflict of laws analysis conducted in the unjust enrichment analysis. Under Maryland law, the elements of a fraud claim are:

(1) that a false representation was made by a party
(2) that its falsity was known to that party or that the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party;
(3) that the misrepresentation was made for the purpose of defrauding some other person;
(4) that the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and that the person would not have done the thing from which the damage resulted if the misrepresentation had not been made; and
(5) that the person suffered damage directly resulting from the misrepresentation.

*Gross v. Sussez Inc.*, 630 A.2d 1156, 1161 (Md. 1993). There is absolutely no evidence on the summary judgment record that the Moshirs promised Plaintiff a commission while knowing that their representation was false or while being recklessly indifferent to its truth. Therefore, viewing the evidence in the light most favorable to the Plaintiff, there is simply no support for first or second elements of the claim.

### F. Claim for Negligent Misrepresentation

Under Maryland law, there are five elements for the tort of negligent misrepresentation:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
(2) the defendant intends that his statement will be acted upon by the plaintiff;
(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
(4) the plaintiff, justifiably, takes action in reliance on the statement; and
(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Gross*, 630 A.2d at 1162 (citations omitted). The critical difference between negligent misrepresentation and fraud is that fraud requires the defendant to know that his representation is false, whereas negligent misrepresentation "only requires conduct which falls below the standard of care the maker of the statement owes to the person to whom it is made." *Id.* (citations omitted). The duty to speak with reasonable care may arise "in a business or professional relationship," and includes the employment context and pre-contract employment negotiations. *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 553-54 (Md. 2000) (citing *Weisman v. Connors*, 540 A.2d 783, 792-94 (Md. 1988)). In the employment negotiation context, the Court of Appeals of Maryland has observed that negligence can occur "either in obtaining or in communicating the information." *Weisman*, 540 A.2d at 796 (internal quotation and citation omitted). "Thus, the negligent failure to properly communicate one's current intentions [regarding the terms of employment] could be a negligent misrepresentation of a present fact." *Id.*

Plaintiff has not satisfied the first element of the negligent misrepresentation claim. As a preliminary matter, Plaintiff does not even allege that the Moshirs asserted a false statement or otherwise conducted any portion of the employment negotiations negligently. In Plaintiff's Reply, he suggests that the negligent action giving rise to this claim was the failure to properly document the promise of commissions to make it legally effective. Plaintiff cites no case law to support a finding of negligent misrepresentation on such grounds, or, more specifically, that a failure to adequately memorialize an agreement constitutes negligent misrepresentation.

## G. Claim for Promissory Estoppel

It appears that there is no substantial difference between Arizona law and Maryland law as to a claim for promissory estoppel. Both accept the Restatement (Second) of Contracts, § 90, as governing the claim. *See Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521 (Md. 1996); *Cityroof Corp. v. Tech Contracting Co.*, 860 A.2d 425 (Md. Ct. Spec. App. 2004); *Double AA Builders, Ltd. v. Grand State Constr.*, 114 P.3d 835 (Ariz. 2005). I will, however, apply Maryland law because the Fourth Circuit has characterized a claim for promissory estoppel as one in tort, *see Jordan v. Alt. Res. Corp.,* 458 F.3d 332, 348 (4th Cir. 2006), and, as stated in Section 4D, *supra*, the law of the forum state probably applies to a tort claim. In any event, I believe that it is prudent to apply Maryland law because that is the law for which Plaintiff argues, and I am ruling against Plaintiff on the claim.

Under Maryland, a claim for promissory estoppel (or what Maryland courts call "detrimental reliance") has four elements:

> (1) A clear and definite promise by the defendant,
> (2) A reasonable expectation by the defendant that the promise will induce action or forbearance by the plaintiff,
> (3) The promise does induce actual and reasonable action or forbearance by the plaintiff, and
> (4) The resulting detriment to the plaintiff that can be avoided only by enforcement of the promise.

*Pavel Enters.*, 674 A.2d at 532; *Harte-Hanks,* 299 F. Supp. 2d at 523. Mechanical application of these four elements may seem to indicate that Plaintiff does have a viable promissory estoppel claim. In *Pavel*, however, the Maryland Court of Appeals emphasized that in applying the fourth element, "the trial court, and not a jury, must determine that binding the [defendant] is necessary to prevent injustice. This element is to be enforced as required by common law equity courts –

16

the [Plaintiff] must have 'clean hands.' This requirement . . . requires the further determination that justice compels the result." 674 A.2d at 533-34.

In light of *Pavel*, PatchLink is entitled to summary judgment as to Plaintiff's promissory estoppel/detrimental reliance claim. The claim by its nature is inequitable. It is based upon the assertion that (1) Plaintiff was orally promised a substantial commission by his college roommate, who was then an owner of defendant; (2) the alleged promise was unenforceable under the statute of frauds and inconsistent with the language of the written employment agreement into which Plaintiff entered; (3) Plaintiff was handsomely compensated for the work that he performed for defendant without consideration of the alleged commission; (4) Plaintiff bases his claim solely upon the testimony of himself, his former college roommate, and his former college roommate's brother; and (5) Plaintiff's college roommate and his brother, as well as plaintiff, would benefit from holding defendant liable in this case because Plaintiff's college roommate and his brother have now started a business that competes with Plaintiff. Under these circumstances for the court to find that Plaintiff has a viable promissory estoppel claim would promote, rather than prevent, injustice.

For the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's motion for partial summary judgment is denied. A separate order to that effect is being entered herewith.

Date: September 30, 2010     \_\_\_/s/_____
                                                          J. Frederick Motz
                                                          United States District Judge